UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| CHARLES R. AUSTIN | * | CIVIL ACTION NO. 07-1462 |
| VERSUS | * | |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. Pursuant to 28 U.S.C. § 636(c)(1) and with the consent of all parties, the district court referred the above-captioned matter to the undersigned magistrate judge for the administration of proceedings and entry of judgment. For the reasons assigned below, the decision of the Commissioner is **REVERSED** and the matter **REMANDED** for further proceedings.

## Background & Procedural History

Charles R. Austin protectively filed the instant applications for Title XVI Supplemental Security Income payments and Title II Disability Insurance Benefits on March 17, 2005. (Tr. 82-84, 390-392). He alleged disability since September 13, 2000, due to a seizure disorder. (Tr. 82, 126).[1] The applications were denied at the agency level of the administrative process. (Tr. 57,

---

[1] The record contains evidence that Austin filed disability applications on at least two prior occasions – September 5, 2000, and November 19, 2001. (Tr. 76-78, 386-388). The claims were denied at the initial stages of the administrative process, with no evidence that they were further appealed. (Tr. 41, 48, 59-65, 389). The record suggests that the latter denial occurred on February 19, 2002, which would seem to preclusively resolve plaintiff's alleged disability through that date. *See*, 20 C.F.R. § 404.921. The Commissioner may address this issue

66-69, 393). Thereafter, Austin requested a July 25, 2006, hearing before an ALJ. (Tr. 436-459). However, in a November 3, 2006, written decision, the ALJ determined that Austin was not disabled under the Act, finding at Step Five of the sequential evaluation process that he was able to make an adjustment to work that exists in significant numbers in the national economy. (Tr. 17-31). Austin appealed the adverse decision to the Appeals Council. However, on July 5, 2007, the Appeals Council denied Austin's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 7-9).

On August 31, 2007, Austin sought review before this court. He contends, *inter alia*, that the ALJ's residual functional capacity assessment is not supported by substantial evidence.

## **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible

---

upon remand. *See*, discussion, *infra*.

medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act (the "Act"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the Act utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the Act. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

3

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

The ALJ found at Step Two of the sequential evaluation process that Austin suffers from severe impairments of burst fracture at L1 with chronic back pain; history of skull fracture at age seven with steel plate implant and post-traumatic seizure disorder; and bilateral carpal tunnel syndrome. (Tr. 23).[2] However, he concluded that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No.

---

[2] The court observes that for purposes of Austin's Title II claim, he remained insured only through December 31, 2005. (*See*, Tr. 20). Thus, to prevail on his Title II claim, he must establish disability on or before that date.

4

4, at Step Three of the process. (Tr. 23-24).

The ALJ next determined that Austin retained the residual functional capacity to perform light work, reduced by the inability to climb ladders, ropes, and scaffolds, work at unprotected heights or around dangerous moving machinery. (Tr. 24).[3] Austin is further limited by the ability to climb stairs/ramps, balance, kneel, crouch, squat, crawl, or stoop only occasionally; and frequently feel with bilateral hands. *Id*.

Plaintiff contends that the ALJ's residual functional capacity is not supported by substantial evidence because the ALJ improperly credited the findings of a non-examining medical expert over the findings of an examining, consultative physician. Plaintiff's argument is well-taken.

On July 18, 2006, Austin presented to John Sandifer, M.D., an orthopedic surgeon, for a physical examination. (Tr. 368-370). Upon examination, Austin demonstrated a normal gait and a full range of motion in both shoulders and elbows. *Id*. He had a normal neurological exam of the upper extremities, but had positive Phalen's tests bilaterally. *Id*. Grip strength was eight on the right and six on the left. *Id*. Straight leg raise on the right produced back pain and right hip

---

[3] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

and thigh pain. *Id*. Straight leg raise was negative on the left. *Id*. Austin demonstrated no motor weakness in either lower extremity. *Id*. A lumbar x-ray showed a healed burst fracture of L1, but the remainder of the lumbar spine appeared to be normal. *Id*.

Sandifer diagnosed history of burst fracture, L1, with chronic low back pain and radicular symptoms affecting the right lower extremity; possible internal derangement with possible torn cartilage of the left knee; bilateral carpal tunnel syndrome, right worst than left; and seizure disorder. *Id*. Sandifer opined that Austin could not perform repetitive pushing and pulling. *Id*. He would have difficulty operating a keyboard. *Id*. He cannot repetitively bend and lift, and is restricted to lifting no more than ten to fifteen pounds occasionally. *Id*. Sitting is limited to no more than 45 minutes to one hour at a time and no more than four hours in an eight hour day. *Id*. He cannot repetitively stoop, crawl, or climb. *Id*. Because of his seizure disorder, he should not drive motorized vehicles or work around machinery or moving parts. *Id*.[4]

Obviously, the limitations recognized by Dr. Sandifer are inconsistent with the ALJ's residual functional capacity assessment. Accordingly, the ALJ attempted to discount Sandifer's findings due to alleged internal inconsistencies. The ALJ also submitted written interrogatories to a non-examining medical expert, John Murray, M.D., an internist, who reviewed the medical record, including Dr. Sandifer's report. (Tr. 375-385). Murray took issue with some of

---

[4] Sandifer also completed a medical source statement. (Tr. 371-374). He indicated that Austin can frequently and occasionally lift ten pounds. *Id*. He can stand and/or walk at least two hours in an eight hour workday. *Id*. He can sit less than about six hours in an eight hour day, with the need to periodically alternate sitting and standing. *Id*. Pushing and pulling are limited in the upper and lower extremities. *Id*. He can never climb, crouch, crawl, or stoop. *Id*. He can occasionally balance and kneel. *Id*. Manipulative functions are limited. *Id*. He must also limit exposure to temperature extremes, dust, vibration, humidity, hazardous machinery, and fumes, odors, etc. *Id*.

Sandifer's findings, and completed a medical source statement which proved considerably more benign than Sandifer's assessment and which formed the basis for the ALJ's residual functional capacity assessment. *Id*. Indeed, the ALJ stated that he afforded significant weight to Murray's opinion. (Tr. 29).

The Fifth Circuit has held, however, that "an ALJ may properly rely on a non-examining physician's assessment when ... those findings are based upon a careful evaluation of the medical evidence and *do not contradict those of the examining physician*." *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.1991) (quoting, *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990)) (emphasis added). Also, a non-examining physician's opinion does not provide good cause for an ALJ to discount the findings of an examining physician. *See, Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (addressing ALJ's reliance upon non-examining physician's opinion to discount findings of treating physician).[5] Here, Dr. Murray's findings clearly contradict the findings of the examining physician, Dr. Sandifer, and thus cannot provide substantial support for the ALJ's determination. Once Dr. Murray's opinion is removed from the equation, the record otherwise remains devoid of substantial evidence to support the ALJ's residual functional capacity assessment.

Because the foundation for the Commissioner's Step Five determination was premised upon a residual functional capacity which is not supported by substantial evidence, the court

---

[5] The Fifth Circuit cited *Lamb* for the proposition that the reports of non-examining physicians do not provide substantial evidence when the non-examining physician's medical conclusions "contradict or are unsupported by findings made by an examining physician." *Villa, supra* (citing, *Lamb, supra*; and *Strickland v. Harris*, 615 F.2d 1103, 1109-10 (5th Cir. 1980)).
    The ALJ's decision to favor Murray's findings in lieu of Sandifer's opinion also transgresses, without explanation, the maxim that the opinions of specialists are generally accorded greater weight than those of non-specialists. *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).

further finds that the Commissioner's ultimate conclusion that plaintiff is not disabled is also not supported by substantial evidence.[6] For the foregoing reasons,

The Commissioner's decision is **REVERSED**, and the matter **REMANDED** for further proceedings in accordance with this opinion.[7]

THUS DONE AND SIGNED, in Monroe, Louisiana, on the 9th day of March, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

---

[6] Plaintiff raised additional issues challenging the ALJ's credibility determination and his alleged failure to explicitly find that he could maintain work. These issues may be addressed upon remand.

[7] Plaintiff urges the court to reverse with instructions to award benefits. The courts have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits. *See, Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also*, *Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits). The instant record is not so disposed. Issues remain regarding the preclusive effect of plaintiff's prior applications, as well as uncertainty regarding his impairments and their limiting effects as of December 31, 2005, – the date that he was last insured for Title II benefits. In addition, further development of the record may ultimately support a residual functional capacity assessment less restrictive than that set forth by Dr. Sandifer.